UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SHAWNTRICE STARR,

                              Plaintiff,

      v.                                            **DECISION AND ORDER**
                                                                05-CV-821S

JOANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

      1.      In this case, Plaintiff Shawntrice Starr challenges an Administrative Law Judge's ("ALJ") determination that she is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that she has been disabled since July 3, 2001, due to a lower back condition. Plaintiff contends that her condition has rendered her unable to work. She therefore asserts that she is entitled to payment of disability benefits under the Act.

      2.      Plaintiff filed an application for disability insurance benefits on March 13, 2003. Her application was denied initially. Pursuant to Plaintiff's request, an administrative hearing was held via videoconference before ALJ Eugene Bond on May 17, 2005. Plaintiff and an impartial vocational expert testified at the hearing. The ALJ considered the case *de novo*, and on June 13, 2005, issued a decision denying Plaintiff's application for benefits. On September 21, 2005, the Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on November 18, 2005, challenging Defendant's final decision.[1]

      3.      On May 17, 2006, and May 18, 2006, respectively, Plaintiff and Defendant

---

[1]The ALJ's June 13, 2005 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

moved for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's Motion seeking the same is denied.

4.  A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. § § 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5.  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and will not substitute "its own judgment for that of the

[Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work

experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.    In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability (R. at 26);[2] (2) Plaintiff's back disorders constitute "severe" impairments (R. at 26); (3) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in the regulations (R. at 26); (4) Plaintiff retained the residual functional capacity to perform light and sedentary work, diminished because she requires unskilled work with a sit/stand option and limited general public contact (R. at 27); and (5) Plaintiff was unable to perform her past relevant work as a CNA. (R. at 24). Considering Plaintiff's status as a younger individual, with a high school education, no transferable skills within her residual functional capacity, and based on the testimony of the vocational expert, the ALJ determined that Medical-Vocational Rules 201.21 and 201.28 directed a finding of "not disabled." (R. at 25-27). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, June 13, 2005. (R. at 26, 27).

10.   Plaintiff's first challenge to the ALJ's decision is that he mischaracterized or improperly disregarded the opinion of her treating physician, Dr. Cameron B. Huckell. Plaintiff notes that in January 20, 2004, Dr. Huckell opined that Plaintiff "is temporarily totally disabled . . . as a result of the accident of 7/3/01," and in a July 27, 2005 report, he and David W. Parsons, RPA-C, indicated that she could not sit, stand, or walk for more

---

[2] Citations to the underlying administrative record are designated as "R."

than two hours. (R. at 220, 217). Plaintiff contends that the ALJ violated the "treating physician's rule" by failing to afford proper weight to Dr. Huckell's restrictive assessment.[3] In rendering his decision, the ALJ considered Dr. Huckell's reports and letters, and ultimately concluded that the objective medical evidence did not support a finding that Plaintiff was incapable of performing any type of work. (R. at 22, 23).

11.     According to the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000). Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of Dr. Huckell's conclusions.

As an initial matter, the record reflects that Dr. Huckell's clinical findings were generally unremarkable. For example, Dr. Huckell observed that on examination, Plaintiff walked with a normal gait, was able to walk on her heels and toes, demonstrated good balance and coordination, retained full muscle strength and range of motion in her bilateral lower extremities, used no assistive walking devices, retained sensation in her bilateral lower extremities, and tested negative for straight leg raising. (R. at 81, 83, 214, 217, 220, 22, 227, 228). In this respect, Dr. Huckell's clinical findings support the ALJ's conclusion that Plaintiff was capable of performing some work.

Although Dr. Huckell and Plaintiff's other doctors opined that she was disabled for purposes of workers' compensation, this did not preclude the ALJ from finding that she not

---

[3] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

entitled to benefits under the Act. (R. at 18, 81, 83, 124, 132, 215, 217, 220, 222, 223, 227, 228). It is well established that a conclusory finding by a medical source that a claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine the claimant is disabled within the meaning of the Act. See 20 C.F.R. § 404.1527(e) (stating that certain findings, including the ultimate finding of whether a claimant is disabled, are reserved to the Commissioner). This is particularly true when a treating physician renders an opinion of total disability in connection with a claim for workers' compensation benefits. Because there are different statutory tests for disability under workers' compensation statutes and the Social Security Act, an ALJ may reasonably disregard a treating physician's conclusion regarding a plaintiff's disability for workers compensation purposes. See Coria v. Heckler, 750 F.2d 245, 247 (3d Cir. 1984); see also Bosley v. Heckler, 879 F. Supp. 296, 304 (W.D.N.Y. 1995). In any event, the record reflects that many of the same medical sources who opined that Plaintiff was disabled for purposes of workers' compensation also suggested that she could be retrained to perform light or sedentary work. (R. at 24, 88, 98, 100, 124, 133). For the foregoing reasons, this Court finds that the ALJ's treatment of Dr. Huckell's conclusions regarding her capabilities was appropriate.

11. Plaintiff next argues that the ALJ failed to identify Plaintiff's residual functional capacity with sufficient particularity, because he failed to explicitly state to what extent she could sit, stand, walk, lift, and carry. This Court does not agree. As previously noted herein, the ALJ found that Plaintiff retained the residual functional capacity to perform a significant range of light work, which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,] . . . . requires a good deal of walk or standing, or . . . sitting most of the time with some pushing and

pulling of arm or leg controls." (R. at 25). Further, the ALJ concluded Plaintiff was restricted to performing light or sedentary work with a sit/stand option and limited general public contact. (R. at 25, 27).

The ALJ's functional assessment is supported by the objective medical findings of Plaintiff's treating physician, Dr. William M. Healy, who observed on August 21, 2002, that she exhibited a normal gait and that her motor skills tested within normal limits, and opined on September 13, 2002, that she was capable of performing sedentary work such as typing and phone service. (R. at 88, 95). Thereafter, Dr. Healy reported that overall Plaintiff was healthy and cleared her for a return to light duty work. (R. at 100, 212). Moreover, Drs. Steven Dina, Michael C. Geraci, and Huckell consistently noted that Plaintiff had a normal gait and full strength in her lower extremities. (R. at 81, 82, 124, 162, 163, 214, 217, 220, 222, 223, 227, 228). In addition, Plaintiff's physical therapist reported that on October 17, 2001, she had minimal pain and impairments. (R. at 202). On the record before it, this Court finds that the ALJ identified Plaintiff's residual functional capacity with sufficient particularity and that his conclusion is supported by the medical evidence.

12.    Plaintiff next argues that the ALJ erred when he concluded that her subjective complaints regarding her disabling pain and limitations were not credible. At the hearing, Plaintiff testified that she walked with a cane, which had been prescribed by Dr. Huckell, that she could walk for up to one quarter of a city block only, and that she could not lift or carry a gallon of milk. (R. at 263, 268, 269). However, as the ALJ noted, there is no evidence in the record that Dr. Huckell prescribed a cane to Plaintiff, and her doctors consistently reported that she walked with a normal gait and required no assistive devices. (R. at 23). Because Plaintiff's alleged symptoms suggested a greater restriction than could be demonstrated by the objective medical evidence, the ALJ properly considered other

7

factors, such as Plaintiff's daily activities.  20 C.F.R. § 404.1529(c)(3).  On a typical day, Plaintiff testified, she readied her children for school, performed household chores, and with her son's help, cooked dinner and did laundry.  (R. at 23, 259-60, 267).  Plaintiff also advised Dr. Dina that she cooked at least four days a week, took care of her children, did limited laundry and cleaning, and showered, bathed, and dressed herself on a daily basis.  (R. at 162).  Under the circumstances, this Court finds that the ALJ sufficiently articulated his rationale for concluding that Plaintiff's "credibility is low at best," (R. at 26) and that his credibility finding was properly based on the medical record and Plaintiff's daily activities.

13.  Plaintiff's final argument is that the ALJ improperly relied on the testimony of the vocational expert in finding that Plaintiff could perform work that exists in significant numbers in the national economy. This Court does not agree.  The regulations provide that when a claimant cannot perform the full range of work at a given exertional level due to his or her non-exertional impairments, the ALJ may rely upon a vocational expert to determine whether there is other work that exists in significant numbers in the national economy that the claimant could perform given his or her residual functional capacity, age, education, and past work experience.  20 C.F. R. § 404.1566(e).  In this case, the vocational expert opined that a hypothetical person of Plaintiff's age, education, work experience, and with her residual functional capacity could perform several occupations which existed in significant numbers in the national economy.  (R. at 273-74).  She testified that her conclusions were consistent with the Dictionary of Occupational Titles ("DOT").  (R. at 274). However, because the DOT does not address the need for a sit/stand option, the vocational expert predicated her conclusions with respect to that restriction on her own professional experience and knowledge.  (R. at 274).  Under the circumstances, this Court

finds that the ALJ appropriately relied on the vocational expert's opinion, which was fundamentally consistent with the DOT.

14. After carefully examining the administrative record, this Court finds that substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and medical opinions based on that evidence. It is clear to this Court that the ALJ thoroughly examined the record and afforded appropriate weight to all of the medical evidence in rendering his decision that Plaintiff is not disabled within the meaning of the Act. Finding no reversible error in the ALJ's decision and further finding that his decision is supported by substantial evidence, this Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 4) is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.


SO ORDERED.


Dated: February 23, 2007
       Buffalo, New York


                                             /s/William M. Skretny
                                             WILLIAM M. SKRETNY
                                             United States District Judge